IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30536
Summary Calendar
_____

WALTER BLOODSAW,

                                             Plaintiff-Appellant,

versus

HELMERICH & PAYNE, INC., ET AL.,

                                             Defendants,

VASTAR RESOURCES, INC.,

                                             Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(97-CV-1586)
_____

March 18, 1999

Before REAVLEY, BENAVIDES and PARKER, Circuit Judges.

PER CURIAM:[*]

    Walter Bloodsaw appeals the summary judgment granted in favor of appellee Vastar

Resources, Inc. (Vastar) on prescription grounds.  We affirm.

                              BACKGROUND

    The summary judgment record shows the following.  Bloodsaw was employed by

Helmerich & Payne International Drilling Co. (H & P).  He was assigned to an offshore rig

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

skidded atop a fixed platform operated by Vastar. The platform is located on the Outer Continental Shelf off the coast of Louisiana.

On January 10, 1995, while employed on the rig, Bloodsaw slipped on stairs and hurt his back. Bloodsaw made a visit to a clinic on January 25, 1995 as a result of his injury. H & P paid for this doctor's visit on February 8, 1995. Bloodsaw continued to work until November 19, 1996, when he claimed that his injury had rendered him disabled. On September 16, 1996, H & P paid for medical services rendered on behalf of Bloodsaw between April 18, 1996, and May 17, 1996. Therefore, during the period from February 8, 1995 to September 16, 1996, H & P made no workers' compensation payments or payments for Bloodsaw's medical care. After November 19, 1996, H & P began making voluntary disability payments to Bloodsaw. The payments continued until June of 1997, at which time H & P received a doctor's report reporting that Bloodsaw could return to work.

Bloodsaw filed suit in state court against H & P and Vastar on or about July 17, 1997, alleging status as a Jones Act seaman and claiming negligence on the part of both defendants. Defendants removed the case to federal court. H & P won a summary judgment on grounds that Bloodsaw lacked seaman status because the rig on which he was working was not a vessel. The district court thereafter granted summary judgment in favor of Vastar on prescription grounds. Bloodsaw appeals the latter summary judgment.

DISCUSSION

Bloodsaw's injury occurred on the Outer Continental Shelf off the coast of Louisiana, and under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*, his claim against Vastar is governed by Louisiana's tort law. *Cormier v. Clemco Servs. Corp.*, 48 F.3d 179, 181 (5th Cir. 1995). Under La. Civ. Code Ann. art. 3492, this claim is subject to a one year prescriptive period. *Cormier*, 48 F.3d at 181.

In *Cormier*, we held that under Louisiana law, if the prescriptive period as to one solidary obligor is interrupted, it is interrupted as to all solidary obligors. *Id.* We further held that the voluntary payment of workers' compensation benefits by an employer under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, operated to interrupt the prescriptive period. *Id.* at 182-83.

Our understanding of Louisiana law, however, compels us to conclude that if the one year prescriptive period ran on the claim against Vastar, it cannot be "revived" by acts of another obligor that serve to interrupt prescription as to that other obligor. As one court has explained:

> Civilian prescriptive periods act to extinguish the civil obligation to which they apply. Once a cause of action is extinguished by prescription, a subsequent timely suit against alleged solidary obligors will not revive the prescribed action. "Once prescription occurs it cannot be interrupted. Timely suit against one solidary obligor does not interrupt prescription that has run against another solidary obligor."

*Nordgren v. Trojan Contractors, Inc.*, 648 So.2d 980, 981 (La. App. 1994) (citations omitted).

In the pending case, the one payment for medical care by H & P on February 8, 1995 might be viewed as a voluntary payment of LHWCA benefits under *Cormier*, which would serve to interrupt prescription as to all obligors. However, no such further benefits were paid by H & P until more than one year later. Under art. 3492, prescription runs from "the day injury or damage is sustained." Therefore, prescription began running on January 10, 1995, or February 8, 1995 at the latest. The one year period expired months before any other event that might serve to interrupt prescription, and under *Nordgren*, Bloodsaw's claim against Vastar is therefore time-barred.

3

Bloodsaw argues on appeal that the claim is not prescribed because the one-year period did not begin to run until November of 1996, when he came to "know the full nature and extent of his damages and claim against Vastar." He cites *Cameron Parish Sch. Bd. v. Acands, Inc.*, 687 So.2d 84 (La. 1997), an asbestos removal case, which explained:

> Though prescription under La. C.C. art. 3492 begins to run from the day injury or damage is sustained, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. . . . "Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. . . . When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." The question, therefore, is whether, in light of the information known, a plaintiff was reasonable to delay in filing suit.

*Id.* at 88 (citations omitted).

We are persuaded that the Louisiana courts would find the claim against Vastar prescribed under the facts presented. At the outset, "[o]nce it is established that more than a year has elapsed between the time the tort occurred and the filing of suit, the burden on proof shifts to the plaintiff to show an interruption or suspension of prescription." *Additon v. Chevron U.S.A., Inc.*, 526 So.2d 465, 467 (La. App. 1988). The burden therefore fell to Bloodsaw to offer summary judgment proof that his injury had not sufficiently manifested itself to make his delay in filing suit reasonable.

Further, we cannot agree that prescription was tolled until Bloodsaw knew the "full nature and extent" of his damages. Louisiana law is clear that prescription is not interrupted until the full extent of injuries are known. "If it is immediately apparent to the victim that he has sustained damages, prescription runs from the date the tort is committed, even if the extent of the victim's injuries are not known." *Id.* at 467. *See also Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992) (noting that "there is no requirement that the quantum of damages be certain or that they be fully incurred," and "prescription runs from the day on which [plaintiff] first suffered actual and appreciable damage"); *Doe v. Doe*, 671 So.2d 466, 471 (La. App. 1995) ("Prescription

4

runs from the date a plaintiff suffers some appreciable damages, even though he may only later come to a more precise realization of the full damages he has suffered."); *Hampton v. Kroger Co.*, 658 So.2d 209, 211 (La. App. 1995) ("Prescription begins to run from the date the plaintiff first suffers actual or appreciable damage, even though he may thereafter come to a more precise realization of the damages or may incur further damages as a result of a completed tortious act.").

*Additon* raised similar facts. The plaintiff testified that on the date of his accident he strained his back and that his back hurt immediately, but claimed that he discovered the extent of his injury – a ruptured disc – only after seeking medical attention on a later date. The court held that the prescriptive period ran from the date of the injury, since the plaintiff experienced pain and knew he had hurt his back immediately after his accident. *Additon*, 526 So.2d at 467.

Under these authorities, Bloodsaw did not carry his burden of showing that he did not suffer actual or appreciable damage until some date after January 10, 1995, the date of his accident. On the contrary, he testified that after he slipped he felt pain in his back, reported the accident to his toolpusher and to the rig medic, and received medication for his injured back. He further testified that after the accident, he took seven days off under his normal rotation, and came back to work with his "back *still* bothering me." He told a coworker upon this return to work that "my back is still eating me up." The coworker told him to visit a doctor during his next period off. He visited a doctor for his back pain on January 25. An employer accident report in the record indicated that Bloodsaw had injured his lower back when he slipped on stairs on January 10, and that he reported the accident that day to H & P. Bloodsaw's summary judgment response argues that "one co-employee testified that Bloodsaw continued to complain of pain in his lower back *from the date of his accident* until he eventually left the rig."

While there may be evidence that Bloodsaw did not become disabled, and thus entitled to LHWCA workers' compensation benefits, until long after his accident, Bloodsaw offered no evidence that he did not suffer actual and appreciable damage on January 10.

AFFIRMED.

5